**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Gregory D. Brown,** ) | **CASE NO. 4:23 CV 787** |
| ) | |
| **Plaintiff,** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| vs. ) | |
| ) | |
| **Dr. James Kline,** *et al.*, ) | **Memorandum of Opinion and Order** |
| ) | |
| **Defendant.** ) | |

**Introduction**

This matter is before the Court upon defendants' Motion for Summary Judgment. (Doc. 24). This case arises from medical treatment that plaintiff received while incarcerated. For the following reasons, the motion is GRANTED.

**Facts**

Plaintiff, proceeding *pro se,* filed this Complaint on April 17, 2023, against defendants Dr. James Kline, Dr. Andrew Eddy, and Karen Stanforth. Defendant Eddy was never served.[1]

---

[1] Plaintiff's brief in opposition to the Motion for Summary Judgment refers to prior counsel's failure to seek to amend the Complaint to add Dr. James Cohen and the

Plaintiff alleges cruel and unusual punishment in violation of the Eighth Amendment under 42 U.S.C. § 1983 in relation to the medical treatment he received for his back issues while incarcerated by the Ohio Department of Rehabilitation and Correction (ODRC). The Complaint identifies defendant Kline as Chief Medical Officer at Trumbull Correctional Institution (TCI) and defendant Stanforth as Assistant Chief Medical Inspector for the ODRC. However, according to Stanforth's declaration, she is a Correctional Grievance Officer for the Chief Inspectors Office of the ODRC. Plaintiff maintains that defendants refused to refer plaintiff for back surgery despite the request by other doctors. As a result, plaintiff's "constant tremendous pain" went untreated and medication was ineffective.

Plaintiff was confined at TCI at the time of the filing of the Complaint. Plaintiff submitted an affidavit with his Complaint which states that on September 28, 2022, he had an appointment with defendant Kline to address tremendous pain in his back from broken screws. Defendant Kline confirmed that plaintiff had broken screws in his back but told plaintiff that the State of Ohio was not going to replace the screws because there was no guarantee that surgery would fix the problem. Plaintiff disagreed with defendant Kline and requested a referral to a neurosurgeon specialty clinic, but defendant Kline refused to do so. The Columbus Medical Collegial Board (not a party herein) also violated plaintiff's Eighth Amendment rights by refusing to approve and request surgery to repair the broken screws in plaintiff's back and which caused plaintiff unnecessary pain. (Compl. Ex. D).

Plaintiff submits an affidavit in support of his brief in opposition to the Motion for

---

"Chief Medical Staff in Columbus." But, plaintiff does not appear to currently seek the amendment.

2

Summary Judgment which states the following. Plaintiff had spinal surgery on June 17, 2019, and four months later the screws broke which caused him severe pain. Plaintiff, who was an inmate at the North Central Correctional Institution (NCCI) at the time, reported this to the medical department immediately. He was not seen by neurosurgeon specialist Dr. A. Ovitt until February 2020. Dr. Ovitt showed plaintiff the x-rays of the broken screws taken by the NCCI medical department in 2019 and ordered plaintiff a surgery consult to fix the broken screws. Plaintiff was transferred to TCI in March 2022 under the care of defendant Kline. Despite Dr. Ovitt's order, Kline informed plaintiff that the Columbus Medical Collegial Board denied the surgery on May 2, 2022. Plaintiff was put on medication which was ineffective to treat his pain and suffering. Defendants continued to deny plaintiff the surgery until February 2024 after it had been again requested by Dr. Hale, the Chief Medical Officer at Pickaway Correctional Institution[2], in 2023. During that time, defendants denied the surgery despite plaintiff's 17 requests to Health Services complaining of the constant pain and the sending of several informal complaints (ICR) to get the needed medical treatment. (pltf. aff.).

Defendant Stanforth submits plaintiff's medical records and the relevant grievance records. Plaintiff agrees that the medical records establish that he was seen 120 times between January 18, 2019 and August 23, 2023, to address his various medical complaints. (Stanforth decl. Ex. A). The grievance records show that plaintiff filed an ICR[3] on 1/19/2020:

> I am writting because it has been 7 months since I've had my surgery and I've seen the neurosurgeon one time. I've had a major surgery (spinal fusion) and I am in a

---

[2] The docket shows that after the filing of the Complaint, plaintiff was transferred to Pickaway Correctional Institution on August 30, 2023.

[3] All quotes of grievance records are in the parties's writing and are not corrected.

> lot of pain. Medical keep telling me that I am scheluded but not returning me for follw-up treatments. This is very non- proffessional and I believe it to be deliberate indifference to my medical need.

The records show that plaintiff met with Jonathan Stump regarding the ICR. It was explained to plaintiff that the medical records stated he should be seen every four months and was scheduled in February 2020. Plaintiff indicated that that was not what he had been told.

Plaintiff then escalated his complaint to a grievance on January 26, 2020, when he wrote:

> I understand that they wrote what they said the dr said but I never saw the actual paper oder that he sent so I go by what the dr. told me. There is no way the dr. is going to complain about me returning four later after the surgery and then tell me to return four months later from the first time being seen since the surgery. I strongly dissagree with what medical is telling me. One time in seven months after a major surgery is totally un-called for.

On January 30, 2020, Lorri Shuler, Inspector of Institutional Services (IIS) at NCCI, responded to plaintiff's grievance:

> Inspector's office has received and reviewed your grievance regarding medical.You state in your grievance that it has been 7 months since you have had surgery and you seen the neurosurgeon one time. You had a major surgery and in a lot of pain and you are being told you are scheduled but not returning you for follow up appointments. To investigate this grievance 68-MED-01 was reviewed, spoke with the HCA in medical and reviewed your medical file with the HCA.
>
> After further investigation of this grievance be advised that you had a laminectomy of L4-L5 and bone fusion of L4-S1. You were released from Toledo Medical center on June 22, 2019 and transported to FMC until July 1 2019. You were advised by the HCA in medical that the documentations from the neurosurgeon was reviewed and you were told that you would have a follow up in 4 months which you are scheduled for an appointment in the month of February 2020 but due to security reasons you will not know the date of that appointment. The medical department at NCCC has to go by what documentation that the doctor has written, you state that you were told that you would be seen every 2-3 months and there is no documentation of this in your medical file so therefore we have to go by the what the doctor's wrote. There was documentation in your file that states you were to be seen at Toledo within a few weeks after your surgery, however you were at FMC and did not go to this appointment.
> The inspector's office cannot diagnose or recommend any type of

4

> medical treatment, but it appears that medical is addressing your medical issues and concerns. This office would recommend that you continue to follow up with medical to make sure all your needs are met. The medical director has the final say in your medical care and again it appears that medical is addressing your issues. There is no violation of any policy, or AR so therefore this grievance is being denied and this office will take no further action in this matter.

Plaintiff appealed this decision to the ODRC Chief Inspector's Office on January 31, 2020:

> I stated that I disagree with this because I strongly feel that the neurosurgeon would not made a big fuss about me not returning on the schelude time and the length of time it took and then re- schelude me to follow-up in another four months. He stated that this was not the proper procedure that the type of surgery that I had.

On March 19, 2020, Assistant Chief Inspector, Karen Stanforth replied to plaintiff's appeal:

> The Office of the Chief Inspector is in receipt of your Appeal; a thorough review of your appeal has been completed that included the application of the following factors:
> • Procedural requirements
> • Proper investigation of your grievance
> • Applicable policies, procedures, administrative rules, directives and ODRC operating manuals
> • Documentation and related evidence
> • Information presented in your appeal
> Based on the aforementioned review, the decision rendered by the inspector is hereby: AFFIRMED

(Stanforth decl. Ex. B).

This matter is now before the Court upon defendants' Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

5

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

6

**Discussion**

Defendants maintain that plaintiff's allegations amount to a denial of the specific medical treatment that he requested. Because a difference in opinion between plaintiff and the prison health care providers regarding plaintiff's treatment does not satisfy either the objective or subjective components of an Eighth Amendment claim, summary judgment is warranted. Plaintiff asserts that defendants refused his request for outside medical treatment and further back surgery, and unreasonably delayed the surgery until February 7, 2024, amounting to deliberate indifference. For the following reasons, the Court agrees with defendants.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. The parameters of a prisoner's Eighth Amendment medical treatment claim are well-established:

> The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would result in unnecessary suffering without serving any penological purpose. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) "The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency." *Id.* at 103–04. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104*; Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

*Wheatley v. Stump*, 2024 WL 4471156, at *8–9 (W.D. Mich. Oct. 11, 2024). In order for a prisoner to state an Eighth Amendment deliberate indifference claim with respect to his medical care, he must demonstrate both objective and subjective components. The objective component requires the existence of a sufficiently serious medical need, *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004), and proof that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. *Coverdale v. Conley,* 2023 WL 246831 (6th Cir. Jan. 18, 2023). The subjective component requires proof that the prison official had a sufficiently culpable state of mind, rising above gross negligence. *Id*.;

7

*Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011).

The Court assumes plaintiff's back issue constitutes a sufficiently serious medical need, but plaintiff cannot satisfy the objective component of his claim because he lacks proof that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.

Plaintiff agrees that he was seen 120 times over a 32-month period. He merely disagrees with the medical treatment given him. Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020) (other citations omitted). "If a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Coverdale, supra* (quoting *Westlake v. Lucas,* 537 F.2d 857, 860 (6th Cir. 1976)). Further, where an inmate has received on-going treatment for his condition, he must show that his treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*.; *Miller v. Calhoun Cnty*., 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (6th Cir. 1989)).

Plaintiff maintains that he was deprived of medical care and his condition was "left untreated resulting in serious medical complications." (Doc. 40 at 8). But, plaintiff only disagrees with the determination that surgery was not the only necessary medical treatment. Plaintiff does not provide any facts from which the Court can plausibly infer that the medical treatment he received was so inadequate and grossly incompetent as to shock the conscience.

Even if plaintiff's claim rose to the level of medical malpractice, this is not tantamount to deliberate indifference. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017).

As to the subjective component, plaintiff does not provide evidence that defendants had a sufficiently culpable state of mind. The subjective component requires proof that an official knew of and disregarded a serious medical need. Plaintiff asserts the following as evidence of defendants' culpability:

- Defendants willfully ignored Dr. Ovitt's recommendation that surgery was necessary.

- Defendant Kline told plaintiff that the Columbus Medical Collegial Board denied the surgery and plaintiff could "write him up in an informal complaint, he didn't care."

- Plaintiff was "forced to suffer tremendous pain" from 2019 to 2024, and there was no reasonable medical excuse for the delay of surgery once the broken screws were discovered.

- The pain "went away once the broken screws were fixed" in February 2024 which shows that the surgery was necessary.

- While the Columbus Medical Collegial Board denied the surgery because there was no guarantee that surgery would fix the problem, surgery did ultimately fix the problem.

- Defendants had the "actual ability" to advise the Board that failure to provide the surgery within a reasonable time would cause greater injury and pain.

- Ultimately, Dr. Hale's 2023 recommendation for surgery showed that it was necessary, and the Board still delayed until February 2024.

These assertions are not evidence of the required culpable state of mind. Furthermore, plaintiff assumes that defendants Kline and Stanforth had the authority to reverse the decision that even plaintiff concedes was made by the Columbus Medical Collegial Board. Plaintiff's own assertions show that it was the Board that had the authority to make the decision regarding surgery. In fact, plaintiff asserts that the Board denied the surgery three times after the broken screws were discovered. Ultimately, the Board delayed the surgery until February

9

2024 even though Dr. Hale recommended it in 2023. This undermines plaintiff's allegation that defendants had the requisite culpable state of mind. Additionally, the medical records show that plaintiff had continuous medical care by defendant Kline in the treatment of his various medical complaints. Plaintiff cannot point to evidence that defendants disregarded his medical needs.

For these reasons, plaintiff fails to establish an Eighth Amendment claim and summary judgment is warranted in defendants' favor.

**Conclusion**

For the foregoing reasons, defendants' Motion for Summary Judgment is granted. The Court further certifies, pursuant to 28 U.S.C. § 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 11/20/24